Alan J. Truelove and Patricia M. Truelove v. Commissioner.
Truelove v. Commissioner
Docket No. 6027-70 SC.
United States Tax Court
T.C. Memo 1971-261; 1971 Tax Ct. Memo LEXIS 69; 30 T.C.M. (CCH) 1122; T.C.M. (RIA) 71261; October 12, 1971, Filed Alan J. Truelove, pro se, 3326 Elm Terrace, Falls Church, Va. Robert S. Erickson, *70 for the respondent. INGOLIA
Memorandum Findings of Fact and Opinion INGOLIA, Commissioner: Respondent determined a deficiency in the petitioners' Federal income tax for 1967 in the amount of $150. The issue before the Court is whether the petitioners are entitled to a dependency exemption for their niece, Barbara, under sections 151 and 152 of the Internal Revenue Code of 1954. [1] *71 In order to resolve the issue, it is necessary to determine whether Barbara was a resident of the United States in 1967. Here then, the ultimate question is whether Barbara was a "resident" of the United States at any time in 1967. Section 871 has to do with the taxing of alien individuals. The regulations relating to it divide aliens into two classes; namely, resident aliens and nonresident aliens. [3] They define the term "residence" [4] and set forth rules of evidence relating to the proof of residence of aliens. [5] In essence, a *72 determination of whether or not an alien is a resident turns on his intention and there exists a rebuttable presumption that by reason of his alienage he is a nonresident. *73 In this case it must initially be presumed that Barbara was a nonresident when she first began living in the United States on December 28, 1967. The evidence of record not only fails to rebut the presumption that she was a nonresident in 1967, but for the most part, it supports such a presumption. 1124 In a sworn statement made on April 22, 1968, Barbara stated she arrived in the United States on December 28, 1967, to visit her aunt and uncle, intending to return to England. She planned to stay about six months. She further stated that in writing back and forth to the petitioner, he suggested it might be possible to immigrate "if I liked it. So I think he wanted to go ahead if I liked it enough to stay out here * * *." Her statements coupled with the lack of any evidence to the contrary indicate clearly that she had not formed the necessary intent to reside in the United States before the end of 1967. The record does indicate that the petitioner wanted his niece to come to the United States on a permanent basis because he wrote to INS as early as November 16, 1967, and received a reply as to what steps were necessary for Barbara to become a permanent resident. However, in her *74 sworn statement, Barbara indicated she did not know the letters had been written until she came to the United States. The record also shows that by February 14, 1968, Barbara did want to become a permanent resident because she filed an application for such status with the INS. On October 9, 1968, she withdrew the application and returned to England. The petitioner asserts that the withdrawal of the application and Barbara's departure from the United States were the result of "pressure" from INS representatives. This may or may not be true. In any case, it would not affect the outcome of this case because the events took place in 1968, a year not before the Court. It fails to aid us in determining what Barbara's intent was prior to 1968. Finally, in addition to Barbara's oral statements which we have already noted, she signed and filed a tax return (Form 1040-N) with the Internal Revenue Service for the year 1968 as a United States nonresident alien. This indicates that she did not consider herself a resident in 1968. If she did not reside here in 1968, when the record contains at least some evidence that she was considering becoming a resident, certainly she was not a resident for *75 the last three days of 1967 when the record is devoid of any evidence as to her intention. In view of the above, we must hold that the petitioner has failed to carry his burden of proof in establishing that Barbara Ann Truelove was a resident of the United States in 1967. While we are convinced the petitioner wished her to become a United States resident and that she seriously considered acquiring such status in 1968, we are equally convinced that in 1967 the necessary intent was lacking. Consequently, the petitioner cannot claim her as a dependent in 1967. Revised and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. All section references will be to the Internal Revenue Code of 1954 unless otherwise indicated. Findings of Fact Some of the facts have been stipulated by the parties and they are so found. Alan J. Truelove (hereinafter called "petitioner") and Patricia M. Truelove are husband and wife who resided at 3326 Elm Terrace, Falls Church, Virginia, at the time the petition was filed. They filed their joint Federal income tax return for the calendar year 1967 with the District Director of Internal Revenue at Los Angeles, California. Barbara Ann Truelove is the petitioner's niece. During 1967 she was a citizen of the United Kingdom and, by virtue of her birth, was also a citizen of Germany. She is not and never has been a citizen of the United States. In 1967 she lived with her father and grandmother in London, England. On December 28, 1967, Barbara came to the United States on a nonimmigrant visitor's visa, which was valid for six months. She had never been here before. She purchased a round-trip ticket and intended to return to England in about six months. On February 14, 1968, Barbara filed an Application for Status as Permanent Resident with the United States Department of Justice Immigration and Naturalization Service (hereinafter referred to as "INS"). On October 9, 1968, Barbara withdrew the application for status as a permanent resident. She returned to England on November 9, 1968, and resumed living with her father. While in the United States, Barbara lived with the petitioner who contributed to her support. Sometime after February 14, 1968, she was employed by Biltwell Slacks, Inc., Los Angeles, California. She filed a United States nonresident alien tax return for the year 1968 with the Internal Revenue Service, listing her income from Biltwell and paying the tax thereon. Opinion Section 151 provides that a taxpayer is entitled to a deduction for each dependent (as defined in section 152), whose gross income is less than $600 (the amount increases for years beginning after December 31, 1969). Section 152 provides that a niece may be a dependent if the taxpayer contributes over half of her support and she is a citizen or resident of the United States. SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): * * * (6) A son or daughter of a brother or sister of the taxpayer. * * * (b) Rules Relating to General Definition. - For purposes of this section - * * * (3) The term "dependent" does not include any individual who is not a citizen of the United States unless such individual is a resident of the United States, of the Canal Zone, or of t the United States, of a country contiguous tohe Republic of Panama. * * *
[2] 1123 While the statute itself fails to specify the date the residency determination must be made, the regulation states that "to qualify as a dependent, an individual must be a citizen or resident of the United States * * * at some time during the calendar year in which the taxable year of the taxpayer begins." Section 1.152-2(a)(1), Income Tax Regs.↩
3. Sec. 1.871-1. Taxation of aliens. For purposes of the income tax, alien individuals are divided generally into two classes, namely, resident aliens and nonresident aliens. Resident aliens are, in general, taxable the same as citizens of the United States; that is, a resident alien is taxable on income derived from all sources, including sources without the United States. Nonresident aliens are taxable only on income from sources within the United States. For classification of nonresident aliens, see § 1.871-7. For determination of the sources of income, see §§ 1.861-1 to 1.863-6, inclusive. ↩
4. Sec. 1.871-2. Determining residence of alien individuals. (a) General. - The term "nonresident alien individual" means an individual whose residence is not within the United States, and who is not a citizen of the United States. The term includes a nonresident alien fiduciary. For such purpose the term "fiduciary" shall have the meaning assigned to it by section 7701(a)(6) and the regulations in Part 301 of this chapter (Regulations on Procedure and Administration). For presumption as to an alien's nonresidence, see paragraph (b) of § 1.871-4. (b) Residence defined. - An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. ↩
5. Sec. 1.871-4. Proof of residence of aliens. (a) Rules of evidence. - The following rules of evidence shall govern in determining whether or not an alien within the United States has acquired residence therein for purposes of the income tax. (b) Nonresidence presumed. - An alien, by reason of his alienage, is presumed to be a nonresident alien. (c) Presumption rebutted. - (1) Departing alien. - In the case of an alien who presents himself for determination of tax liability before departure from the United States the presumption as to the alien's nonresidence may be overcome by proof - (i) That the alien, at least six months before the date he so presents himself, has filed a declaration of his intention to become a citizen of the United States under the naturalization laws; or (ii) That the alien, at least six months before the date he so presents himself, has filed Form 1078 or its equivalent; or (iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident. (2) Other aliens. - In the case of other aliens, the presumption as to the alien's nonresidence may be overcome by proof - (i) That the alien has filed a declaration of his intention to become a citizen of the United States under the naturalization laws; or (ii) That the alien has filed Form 1078 or its equivalent; or (iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident. (d) Certificate. - If, in the application of paragraph (c)(1)(iii) or (2)(iii) of this section, the internal revenue officer or employee who examines the alien is in doubt as to the facts, such officer or employee may, to assist him in determining the facts, require a certificate or certificates setting forth the facts relied upon by the alien seeking to overcome the presumption. Each such certificate, which shall contain, or be verified by, a written declaration that it is made under the penalties of perjury, shall be executed by some credible person or persons, other than the alien and members of his family, who have known the alien at least six months before the date of execution of the certificate or certificates.↩